UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| DERRICK REESE, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. CV611-057 |
| | ) | CR609-035 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## REPORT AND RECCOMENDATION

Derrick Reese has filed a "Motion Pursuant to [28 U.S.C.] § 2255(f)(4)." CR609-035, doc. 67.[1] The government moves to dismiss it as untimely. Doc. 74. Reese disagrees. Doc. 84.

## I. BACKGROUND

On November 23, 2009, this Court convicted Derrick Reese, upon his guilty plea, of violating 21 U.S.C. § 841(a)(1) ("Distribution of cocaine base"). CR609-035, doc. 47 at 1. It sentenced him as a career offender to 188 months' imprisonment. *Id.* at 2. It also provided to his lawyer,

---

[1] The Court is citing only to the criminal docket and using its docketing software's pagination, which may not always line up with each paper-document's pagination.

Giliel A. Nellis, a reminder notice that included, under a "Suggested Filing" section, this statement: "I understand that I am duty-bound to not only consult with my client following conviction and sentence, but also have him or her express, in *writing*, his or her decision whether or not to appeal." Doc. 53 at 2 (emphasis added). Nellis signed and filed that notice, which also contained a Court-generated form titled "POST-CONVICTION CONSULTATION CERTIFICATION." *Id.* It was designed to capture the signature of both Nellis and Reese showing that Nellis consulted with Reese and that Reese elected to appeal or not.[2] *Id.* at 3. Reese signed the form but failed to make an election. Instead, in

---

[2] The Court did so because the appeal of a federal conviction is "a matter of right," *Coppedge v. United States*, 369 U.S. 438, 441 (1962), and thus a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id.*

Because this step is too often mishandled, *see, e.g.*, *Pinckney v. United States*, 2010 WL 5497793 at * 1 n. 1 (S.D. Ga. Dec. 3, 2010) (collecting cases), this Court created the above-noted reminder "Notice Of Counsel's Post-Conviction Obligations," to be furnished to counsel and client immediately after each conviction. *See Irick v. United States*, 2009 WL 2992562 at * (S.D. Ga. Sep. 17, 2009). That Notice requires both attorney and client to consult about the defendant's appellate rights, then execute and file the Notice, thus memorializing that consultation and the defendant's decision, with this Court. Failure to do so can result in substantial costs to both counsel and the Court system. *See Hayes v. United States*, 2011 WL 3468799 at * 5 n. 5 (S.D. Ga. Aug. 9, 2011) ("It is not difficult to estimate that § 2255 motions like this cost the taxpayers $10,000 or more, and in a time of record national debt."), *adopted*, 2011 WL 4704219 (S.D. Ga. Oct 6, 2011).

the check-list election portion of the form, Nellis evidently handwrote this: "Waived right by failing to respond timely." *Id.*

In a December 11, 2009 letter to this Court, Nellis said he consulted with Reese pursuant to that form but Reese failed to inform him, by the December 10, 2009 deadline that Nellis gave him, whether he wanted to appeal. Doc. 53 at 5. Nellis did not indicate whether he provided a copy of this letter to Reese. *Id.*

The record shows no further communication (from Nellis or Reese) with this Court until October 12, 2010, *eleven* months later, when Reese filed a "Notification of Status of Appeal." Doc. 57. In it he referenced his November 23, 2009 conviction date and asserted that, "[t]o date, petitioner has received no notice as to the status of petitioner's appeal." *Id.* at 1. He did *not* mention his consultation with Nellis, much less his failure to make a timely election on the above-noted form.[3] Since Reese did not style his "Notification" as a motion, the Clerk did not place it on the Court's motion list and the Court took no action.

On February 8, 2011, Reese wrote a letter to this Court's Clerk. Doc. 58. In it he inquired about his "Notification," then asserted:

---

[3] There is no indication that Reese provided Nellis with a copy of this "Notification" and follow-up letter to the Clerk, doc. 58, and in any event the record reveals no response from Nellis.

3

> Also you told me back August of 2010 that you forward[ed] my request for my transcripts to the Court Report[er] who is Lora Carter. She h[asn't] sent them neither [sic] ha[s] my attorney. So since you can't find my Appeal where do I have to receive or get the Appeal that I signed. I'm not able to get in contact with my Attorney [be]cause he don't except [sic] my calls or respon[d] to my letters!

Doc. 58 at 1. An unsigned, undated, two-sentence note from the Clerk of this Court follows that document:

> Mr. Reese,
>
> I have mailed your Notification of Status of Appeal to the USCA
> You may want to file a Motion to file an Out of Time Appeal.

Doc. 58 at 2; doc. 67 at 7.[4] A February, 11, 2011 Clerk's form shows that on that day this Court's clerk mailed Reese's "Notification of Status of Appeal" to the Eleventh Circuit' clerk. Doc. 59.

---

[4] The Clerk also sent him a letter now attached to Reese's § 2255 motion:

> Mr. Reese,
>
> re: Notification of Status of Appeal. CR 609-35
>
> I am enclosing a copy of the Docket Sheet in the above case.
>
> The court never received your Notice of Appeal. I notice in your notification that you mailed your Notice of Appeal to the Statesboro Division. The court does not have a staff at our Statesboro location.
>
> I have filed your Notification of Status of Appeal.

Doc. 67 at 7.

4

The Eleventh Circuit's docket reflects this entry: "CRIMINAL APPEAL DOCKETED. Notice of appeal filed by Appellant Derrick Reese on 10/12/2010. Fee Status: IFP Granted." Under that docket entry is a February 16, 2011, Eleventh Circuit clerk's letter to Nellis noting that Reese's appeal was now pending and reminding him that he was Reese's attorney on direct appeal. Doc. 60; *see also* doc. 65. Nellis responded by moving that court to allow him to withdraw:

> The undersigned counsel hereby moves for an order permitting his withdrawal from representation of the Defendant in this case. Defendant has placed a grievance with the Georgia Bar against Counsel which counsel has responded to and vehemently denies such accusations by Defendant. Defendant has asked for another attorney to be appointed other than the undersigned counsel. The motion is based upon the uniform rules of this court. A proposed order is attached.

Doc. 62. The Eleventh Circuit refused. Doc. 63. This Court never released him from representation, either.

Though demonstrably late,[5] Reese (through Nellis) thus filed, on February 16, 2011, a direct (and at this point redundant) appeal with the

---

[5] Under Fed. R. App. P. 4(b)(1)(A)(i), as amended on December, 1, 2009, "the time for filing a direct appeal [now] expires 14 days after the written judgment of conviction is entered on the criminal docket. Fed. R. App. P. 4(b)(1)(A)(i) and 4(b)(6)." *Robinson v. United States*, 2011 WL 2222501 at * 1 (M.D. Fla. Jun. 7, 2011). Prior to 2009 the rule allowed only 10 days. *Arroyo v. United States*, 359 F. App'x 118, 119 (11th Cir. 2009). Under either version, *see* doc. 74 at 2, it is undisputed that Reese's appeal was untimely.

5

Eleventh Circuit. Docs. 60 & 65. Nellis then opposed the government's April 29, 2011 motion before that court to dismiss the appeal as untimely. *See United States v. Reese*, No. 11-10671 (May 13, 2011 defense brief at 2). In that opposition brief Nellis blamed *this* Court for the late appeal. *Id.* ("[A]lthough the district judge clearly instructed Reese on the applicable [appellate filing] deadline, the District Court *did not ensure his comprehension of the deadline or the deadline's effect of fatally barring an appeal.*") (emphasis original).

It is in that light that Reese filed in this Court his "Motion Pursuant to [28 U.S.C.] § 2255(f)(4)" in May, 2011. Doc. 67; *see also id.* at 5 (signature-dated May 24, 2011). His goal is "to reinstate [his] right to a direct appeal. The premise of this request is that counsel failed to file a direct appeal on [Reese's] behalf when requested to do so." Doc. 6 at 1. He thus sought that appeal even though one was pending.

In effect, then, Reese filed a "hedge" motion. *Id.* at 5. This Court stayed this case while the appeal was pending. Doc. 69, *reported at* 2011 WL 3470996. The Eleventh Circuit then granted the government's motion to dismiss that appeal as untimely. Doc. 70. This Court then

reopened this case, doc. 71, and the government now moves, over Reese's opposition, doc. 84, to dismiss his "§ 2254(f) motion." Doc. 74.

## II. ANALYSIS

Reese had to file his § 2255 motion within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4); *Walker v. Martin*, ___ U.S. ___, 131 S.Ct. 1120, 1129 (2011). The one-year limitations clock began ticking, at the latest, on December 9, 2009 (10 business days after his November 23, 2009 judgment of conviction was entered); *see Moore v. United States*, 438 F. App'x 445, 446 (6th Cir. 2011); *see also* doc. 74 at 2 (the government says possibly December 7, 2009 due to the Rule 4(b) change, but the difference is immaterial here).

Thus, Reese simply could not sit around until October 2010 (eleven months later, when he filed his "Notification of Status of Appeal"), much less May 24, 2011 (his § 2255 motion's signature date, doc. 67 at 5) to file his § 2255 motion. Reese cites *Aron v. United States*, 291 F.3d 708 (11th Cir. 2002). *Aron* underscores somewhat subtle diligence guidelines. First, the one-year clock starts ticking not necessarily on the last day for

taking a direct appeal. It also is "not necessarily related to a defendant's actual efforts or actual discovery of the relevant facts." *Id.* at 711.

Instead, diligence controls. Thus, courts determine "whether the [defendant] exercised due diligence because ... if he did so, [then] the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." *Id.* But if the defendant was not diligent then the Court "speculate[s] about the date on which the facts could have been discovered with the exercise of due diligence." *Id.* at 711, n. 1.[6]

---

[6] Reasonable, not maximum, diligence is required. *Aron*, 291 F.3d at 712. And the inquiry must account for the movant's confinement conditions -- the "reality of the prison system." *Id.* (quotes and cite omitted). "No rule of thumb" exists on "how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number." *Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011).

Note, too, that *Aron* addressed only whether a movant was diligent enough to meet § 2255's one-year limitation deadline. It thus was not an "equitable tolling" case, where the limitations deadline is missed but equitable considerations toll it. *See, e.g., Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *United States v. Myrthil*, 433 F. App'x 727, 729 (11th Cir. 2011).

Still, diligence animates that showing, too. *Foley v. United States*, 420 F. App'x 941, 942 (11th Cir. April 1, 2011) ("We have explained that equitable tolling is available only if a [prisoner] establishes both extraordinary circumstances and due diligence.") (quotes and cite omitted). And equitable tolling "should be invoked only sparingly." *Ramos–Martinez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011).

8

In contrast to the persistent "diligence efforts" made in *Aron, id.* at 713-14, Reese exercised nothing even approaching that here. Worse, he now resorts to obfuscation to cover his *lack* of diligence. In his initial filings he admits Nellis consulted with him and that *Reese himself* hesitated: "Petitioner expressed a desire to consult his family." Doc. 67 at 2. He then equivocates:

> Due to prison conditions[7] petitioner was unable to contact counsel for sometime[8] [sic] thereafter. Upon contact[9] counsel informed petitioner that he had filed a *motion*[10] on petitioner's behalf, which he would forward to petitioner. Having not received this *motion*, after repeated assurances that it would be sent.[11] Petitioner on October 3, 2010, wrote to the clerk of the district court and inquired as to the status of petitioner's appeal.

*Id.* (footnotes & emphasis added).

Reese conspicuously omits dates which might otherwise pin him down on either side of the diligence equation. *See supra* n. 7-11. He also manipulatively implies that Nellis lulled him into inaction by filing some

---

[7] Reese conspicuously does not say what conditions.

[8] Reese conspicuously does not say *how long*.

[9] Reese conspicuously does not say when.

[10] Reese conspicuously does not say what motion. And, as will be shown *infra*, this is a patently false statement.

[11] Reese conspicuously supplies no dates.

9

sort of "motion." He obviously wants the Court to infer that it was a "motion" by which any reasonable person would be lulled into inaction:

> Since petitioner didn't know the steps to take at the time to see the outcome of his direct appeal, he waited on his counsel [be]cause counsel told him that he filed *a motion* on his behalf. Petitioner then waited and started to prepare arguments for his to look into and to present to the courts when it was time to go back to Court. Since petitioner never been in a situation like this he thought it was [up] to his counsel to let him know the outcome of his direct appeal and [thus] left it in his counsel's hands and responsibil[i]ty to update him on the status of it.

Doc. 84 at 3 (emphasis added).

But Nellis never filed any motion, and Reese himself underscores this fact in his brief opposing the government's dismissal motion. Doc. 84 at 3. There he cites Nellis' *brief* in in response to the *government's* motion to dismiss Reese's direct appeal -- an appeal which itself was not filed until *after* Reese sent in his October 12, 2010 "Notification" (hence, eleven months after Reese's conviction became final):

> During that process [i.e., when Reese finally began to inquire about his appeal] petitioner received the *motion*[12] that MR. NELLIS sent in to the courts that stated the District Courts didn't ensure petitioner comprehension of how important the deadline/deadlines effect and will factually be barring an appeal. Where counsel goes

---
[12] Nellis never filed any motion, but only a May 13, 2011 defense *brief* responding to the government's direct-appeal dismissal motion. That May 13, 2011 date obviously is *months after* the November - December 2009 period in which Reese impliedly claims that Nellis "lulled" him by assuring him that he (Nellis) had filed some sort of motion on his behalf.

on and try to blame the courts (judge) of petitioner's appeal not being filed and not wanting to take the blame for himself. . . .

Doc. 84 at 6 (footnote & emphasis added).

Reese's own words therefore show that Nellis in fact had filed no lulling "motion" during those eleven months, when Reese (a) never did tell Nellis whether he wanted to appeal; (b) never wrote to him, which would be the obvious alternative if in fact every last prison *barred his outgoing calls* as Reese impliedly claims; and (c) never contacted the courts. Hence, he cites nothing to lull him into repose, and thus excuse his indolence during those eleven months. At best he confects misleading diversions, rather than demonstrating the requisite diligence.

This Court recently reminded that "judicial systems are operated by human beings who err. Defendants know this. They thus must make a reasonable inquiry, even if counsel tells them they may rest easy and do nothing, if in fact a large amount of time marches by and nothing happens in their cases." *Clarkson v. Williams*, 2011 WL 2604792 at * 3 (S.D. Ga. Jun. 30, 2011) (citing *Webster v. Sec'y for Dep't of Corrs.*, 384 F. App'x 979, 983 (11th Cir. 2010)). Reese simply failed to do that here.

The Court should therefore **GRANT** the government's motion to dismiss this § 2255 proceeding as time-barred, and thus **DENY** Derrick

Reese's "Motion Pursuant to [28 U.S.C.] § 2255(f)(4)." *See Moore*, 438 F. App'x at 445 (since § 2255 movant failed to show that he diligently inquired into the status of his appeal before filing his § 2255 motion, he was not entitled to delay the start of the § 2254(f)(4) limitation period for filing such motion until he discovered his attorney's failure to file notice of appeal); *see also id.* at 449-50 (no equitable tolling justified either; he was aware from the beginning of the requirement to file a notice of appeal, and he provided no evidence that he checked the status of his appeal before discovering his attorney's failure to file).[13]

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9,

---

[13] This Court recently noted the costly proceedings that arose from another "lost-appeal" claim, then underscored the savings that can be reaped through use of the "Notice Of Counsel's Post -- Conviction Obligations" form:

> It thus behooves the bench, bar and government to ensure that [the form] be used in every criminal case. *See Baughman v. United States*, 2008 WL 3861991 at *4–5 (S.D.Ga. Aug. 18, 2011) (copy of suggested form). To head off bogus, post-Notice claims that defendants "changed their mind" and later "sent a letter" to their lawyer requesting an appeal within Fed. R.App. P. 4(b)(1)(A)'s 14–day period, sentencing judges can hand the Notice to each defendant after sentencing and instruct him, on the record, to (a) timely complete the "Notice" with his counsel and file it; and (b) immediately file with the Court a copy of any post-Notice, change-of-mind request for their counsel to file an appeal. An executed copy of the Notice with no follow-up filing from the defendant can then be accepted as prima facie evidence that the defendant elected to take no appeal. Verified claims to the contrary would then face investigation and prosecution if found to be perjuriously made.

*Hayes*, 2011 WL 3468799 at * 5 n. 5.

2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this <u>9th</u> day of January, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA